May it please the court, Hal Rosner for appellants. Since the briefs were filed in these two cases that are before the court today, this court decided the case of Gonzales v. Carmax, which we believe is expressly or at least impliedly controlling on all issues. While standing was before the court in Gonzales, having been briefed and argued, it was not expressly mentioned in the decision, although the reasons for standing are found in the Gonzales decision. When deciding issues of standing, we start with the statute itself. When we deal with statutory violations, we look what the standing requirements are in the statute. In Gonzales, the court noted the standing requirements. In section 3, the court found that standing and the violations are found in vehicle code of section 11713.18. Subsection A provides nine requirements for selling or advertising a vehicle as certified. At issue in Gonzales, and in this case, is subsection 6, requiring prior to sale, the dealer must provide a buyer with a completed inspection report indicating all the components inspected. The court noted, though, in subsection B of that same statute, the statute provides that a violation of any of the nine provisions, A1 through 9, is actionable, and that's the language, is actionable under the CRA, the UCL, false advertising statutes, or any other applicable state or federal law, citing vehicle code 11713.18B. So the question before the court is, is applicable, or is actionable mean is actionable? Well, under the terms that those other statutes provide, right? And that requires you to show some kind of actual damage. Well, two things. One, not necessarily, because I pointed out to the court that in other statutes it says if you show damages, it is actionable. We gave the court the Rojas v. Platten case that said that it did not require damages. The second, I saw, I just heard you use the word actual damages. Unfortunately, Carmax in every brief file to every court has miscited the law. In every brief file before this acquittal court, Carmax cited the law. The law is not actual damages. As we have supplied in every single case, and nothing stops Carmax from misrepresenting the law, the law is not actual damages. It's just whatever Prop 64 imposed, right? Right. And which is what? I'm sorry. I'm sorry. I didn't mean to cut you off. I was just saying what, so if it's what Prop 64 imposed, what did Prop 64 impose? Well, it's any damage. Okay. Yeah. That's all I meant. Sorry. But there's a difference between actual and any. We may be angels in the hair. You have to have been harmed in some fashion. You can't just have, like, be somebody off the street, right? Absolutely. Okay. Myers v. Sprint talked about any. So let's talk about that. We briefed to death the law regarding damages. I think that Honoho's case, the Ninth Circuit opinion, would be directly controlling. We also briefed to death the Kwikset case. Following those cases, there were additional district court cases, some of which are very similar to ours. There was the Avon case. Well, hang on. Just before you get to the cases, let me just understand your theory as to why your client or clients can't, oh, yeah, this is both cases together, were harmed. Because in a nondisclosure case, one would normally think that you, as a consumer, weren't harmed unless disclosure of the true facts would have caused you to make a different decision, right? Right. In both cases, both in summary judgment and in the pleading stage, which the clerk was decided, we made it very clear and pled the declarations, and the courts found our clients would never have bought the vehicles and or paid the price they did, but wouldn't have even bought the vehicles if they were not sold and advertised and promoted as certified. Okay, but right. So let's say, though, that the failure under Gonzalez here was that CarMax did not, you know, have a little checkbox like check, check, check, everything was good, right? They didn't provide that to your clients before the purchase. But let's say that in the individual cases involving your clients, that the disclosure of that required thing that Gonzalez has said is now required would have shown that, actually, they did check all of those things and they all worked just fine. So in that scenario, I guess that's what I'm wondering. Why would any consumer in your client's shoes, if they got what the law required them to get and it showed that everything was a go, why would we assume that they would make a different purchasing decision? Well, one, we'll never know because CarMax destroyed the actual inspection report. They do a due report of 236 components. In neither case did they find that everything worked. In both cases, they did repairs on the vehicle, which were undisclosed to the consumer. But we'll never know because they destroyed the evidence. The law, you're harmed because the California has established standards for selling a vehicle as certified. So to say that if you don't follow the standards, it can still be certified, is to let car dealers make up their own standards for selling certified vehicles, which defeats the entire purpose of the legislation. This is what the court in the Lee case somewhat did. The court said, well, what makes a car certified is being inspected. The problem is, Your Honor, every vehicle is inspected. The vehicle code mandates it. The other provision that has to be considered by the court is when the statute was enacted, there already existed vehicle code 24007, which said it is a violation of law to sell any vehicle in violation of these code provisions. So the code says you cannot sell or advertise the vehicle as certified unless you comply. What CARMAX is saying, we don't have to comply because under our own standards, our vehicle is certified and therefore people are not damaged. It's sort of a circular reasoning, which the court implied. So if we take the reasoning in Lee, every dealer, every dealer can call every vehicle certified because they all inspect the vehicle to some extent. You have to under the vehicle code. You have to check for brakes, safety lamps. So because every car dealer inspects every vehicle, does that mean they can all call every vehicle certified? And that was sort of the situation before the legislation was enacted. When they put in provisions A1 through 9, they set forth a statutory framework for selling and advertising vehicles as certified. So the vehicle isn't certified, and if you don't follow that, you can't call it. And I think it's somewhat similar to one of the district court cases was the Sue B. Honey case. There are two possibilities, right? Either they did the inspections and they just failed to say it in the report. I mean, in the inspection sheet, we held that in Gonzales that what they gave was not enough. Right. But it's entirely possible that they actually did the inspections and just a piece of paper wasn't adequate to reflect that. And if that's the case, this is what I understood Judge Waltz's question to be, if they had done what they were supposed to do, your clients would have bought the car. Not necessarily, because in each case, the vehicle did have components that needed repair or replacement. They needed repair or replacement at some point after sale. No, post pre-sale and pre-sale. What's the record of that? The record of that is that CarMax decides on what it's going to repair based upon that. In each case, they produce the repair records of what repairs they made pre-sale. So the record is CarMax does a 236-point inspection, giving a list similar to what normal companies give to a CPO. They find pass-fail.  And then there's a repair order of all the repairs that they perform. None of this is disclosed to the consumer. The consumer having, for instance, found out that a number of items checked were not found to be properly repaired. And, in fact, in both cases we have, we have cars sold that were really in pretty horrible condition. One had a transmission that within weeks started spewing its parts out. The other one immediately started having all sorts of mechanical problems, too. But that's post-sale. What evidence is there that these were defects that existed pre-sale that it didn't fix them? In pre-sale, the actual CarMax repair records that they performed were both put in the records for each vehicle. If we adopt this sort of standard, it basically renders the statute. I'm sorry, you don't answer my question. You just sort of said something and then went on to something else. Do you understand the question? Yeah. The repair records were in the record. I'm sorry? The repairs performed by CarMax pre-sale. Okay. Well, that tells you what they repaired. What record is it that they knew was defective and didn't repair? You have to take that. The only way you can do that is look at the tires were sold were immediately found to be bald in one case or that within days everything started to malfunction. You're placing an impossible standard for plaintiff to get into their heads when they destroy the evidence. I'm just asking a question of what's in the record. It's in the record. You have asserted that there were things done that were defective before. Remember, this was an answer to the question of if they had disclosed what they actually did, wouldn't your clients have just gone ahead and bought the car? And you said no because they would have been aware of these defects. And I'm trying to figure out what these defects were. Those are what was found in the repair orders. CarMax creates a sheet, and it shows on that sheet a summary of all repairs performed on the vehicle. But those are the things that are repaired. Right. They don't tell you because, and again, I think the burden has to shift here, they destroy the records. So to put on a plaintiff, because CarMax destroys their actual inspection checklist. It's very tobacco company-ish what they do here. If you destroy all the evidence and you say, wow, you don't have the evidence, yes, that is a problem. The actual inspection checklist, the 236-point list, is destroyed by CarMax. They destroy the evidence of what they found. And you had a detailed question of counsel about this. They destroy that evidence. You questioned them at length about this. The only thing they keep is what they choose to repair. Having destroyed the evidence, yes, it's hard at the pleading stage to allege what they knew. You have to look at what quickly broke down to create an inference. And you have, I think, a shifting of the evidentiary burden based upon their destruction of the only evidence. You can't really reward them for destroying the evidence. And nor can you render a statute basically meaningless here on it. The issue that came up, and this is the same arguments you're making here were found very much in the Honohos case. This is what they argued there. In Honohos, they argued, well, wouldn't you have bought the item anyways? That's the Ninth Circuit case where they said, you know, reduction in price on sale. But the argument was, well, you paid the price you intended to pay. Wouldn't you have bought it anyways? And, no, the Ninth Circuit completely said, no, that isn't proper. You're basically allowing massive fraud in the marketplace. Labels matter. Misrepresentations matter. The law prohibits. The law says you cannot sell it as certified. And they wouldn't have bought it. Under your theory, tell me if this is wrong, you would say that even if we had the completed checklist, right, and every single one of those 236 items got a green light check, no repairs needed, right, you would say if CarMax maintained, kept that record and you could get access to it through discovery, that the mere fact under Gonzales they didn't provide that to you, right, rendered their labeling of the car as certified unlawful. And so then all your client would have to do is say, well, I wouldn't have bought the car if it hadn't been certified, even though we would be able to know that even if you had gotten everything that they were supposed to provide you, no reasonable consumer would have made a different decision, right? And you're saying even in that case the plaintiff wins. I agree. Well, so that's what I guess I don't quite follow. Why is that? Because the list itself is important in the consumer decision. Let's say CarMax has a 236 point. Let's say Buyer B has a 12-point list. The consumer is entitled to the information to see under the law, and what the California legislature envisioned here, you know, a law that I worked on, is that they would be entitled to see prior to making a purchase decision not only the results of what was inspected, but what was actually inspected. Dealer A may have a 12-item list. Dealer B may have a 186-item list. And we, in this case, we went up and deposed the Department of DMV, which held that this list was blatantly illegal, what CarMax does, which is a court held in Gonzales. So to claim that the law then has a prohibition, you cannot, which we have to start with, what does the law say? The law says you cannot sell or advertise it. We're focused on the wrong issue. The law says you cannot sell or advertise the vehicle as certified if you don't comply. You've got 15 seconds left. So if you sell or advertise it as certified, you have violated the law. If that representation of certification affects the buying decision of the person, that is damage. You can't take the statute backwards and read it backwards in hindsight to do it. Thank you. Good morning. Kurt Schlichter for CarMax. May it please the Court, let me, let's go back to the facts of this case. First of all, the facts in this case is summary judgment. Which case? Well, Lee. But also, Chavez, CarMax did an inspection. The repair order history is there to look at, 795. In Lee, he complained 25 days after he got the vehicle that it was pulling to the right. That there was somewhere off the front wheels. If you look at the repair order history, we worked on the front wheels. It says so right there. So we did inspect it. We actually inspected it. I'm sorry. I have no idea what the point of this is. Well, Your Honor, Judge Watford was bringing up a very, very important point. If we actually did what we said we did. No, actually, I have the same puzzled reaction as Judge Kaczynski. Because, actually, I think what you just said harms your case. If I were a consumer and I found out that you had tried to repair something, let's say, three times before you could fix it, you know what, I'd probably want to pick the other car. So it would be material to my purchasing decision. Well, Your Honor, I have to make something clear. This was not an alignment problem that we worked on before the sale. But it does show that we worked on. So what? I'm saying I have two cars that are basically identical, one of which I see, if you had told me the truth, you had to keep going back three times to try to fix the same problem. And then finally you said problem solved. The other car has a pristine record. As between those two cars, I'll probably take the one with the pristine record, right? Well, first of all, Your Honor, what I'm saying is there is proof here that we actually did the inspection. There is no proof because there is nothing in the record showing that the problem Mr. Lee complained of after 25 days was present before. Your original questions were very much on point and very much supported by the record. There is no showing that this problem preexisted the sale. Again. I don't think that matters. I mean, even under the most generous theory to your clients, and I understand that the plaintiffs disagree with this, but even under the most generous theory, if the plaintiffs came in and said, if you had disclosed to me the repair history and it was as to something that would matter to a reasonable consumer, even if it didn't manifest itself after the sale, but if I had known about that before the sale, I would have picked a different car, they're in business.  First of all, even under Gonzales, Gonzales does not require a narrative of exactly what work was done. It requires a notation that the part was inspected. It doesn't require that notation be made. No law requires a disclosure of the repairs. We did not hide the repairs. We did not lie about them. I think Gonzales, tell me if I'm misreading, misremembering the case, and we have someone who knows it better than any of us probably, but I thought Gonzales said you had to give the results of the inspection, which in my mind would include the fact that the first time we checked it, the damn thing didn't work and we had to fix it. Well, I don't believe that's what Gonzales says. Gonzales says you need something more. They talked about check boxes, but it did not set forth, and the statute doesn't set forth, you need to give me the results. Now, if the California legislature had said used car certification requires that you give exactly what you did on it, then CarMax could govern itself accordingly. The uncertainty here is one of the reasons there's a certification request pending. But let's look at this case, and let's look at what Mr. Lee said. If you look at the record, I think it's 748, he kind of says, I didn't read, I expected them to do repairs. I wanted them to do repairs. It was a used car. He'd had a number of marquees before. He wanted them to do repairs. That was what was important, not the name certification. It was the underlying inspection, and this is a summary judgment. There is no general genuine issue of material fact showing that CarMax did not do what it said it did, which is inspect these parts. There's no evidence it didn't. Now, how was Mr. Lee harmed? By getting what he wanted. He wanted a vehicle that's inspected. The facts show it was inspected. He wanted a vehicle that had undergone repairs for problems, because it was a used vehicle. It had just like one mile over 27,000. He wanted that. He got what he wanted, a vehicle that had been inspected, a vehicle that had been repaired. And after 25 days, he came in, because it had a problem, because being a used vehicle, sometimes they develop problems. CarMax fixed it using the express warranty it gives. An express warranty is actually more than what's required under the certification law. All you have to do is not disclaim an implied warranty. CarMax actually gives an express warranty for these vehicles. CarMax goes beyond. Can I cut you off? Yes, of course. The thing that I guess troubles me the most about your position here is that Gonzalez didn't just reverse summary judgment in your client's favor, but actually, sua sponte, granted summary judgment in the plaintiff's favor without any apparent delving into the kinds of things you're talking about, right? You're right, Your Honor. Standing was briefed essentially in a footnote. It was not argued, and it's not talked about in detail in the opinion itself. A recent decision on the pending fees motion, essentially sending it back to Judge Carney, says explicitly, look, there's more to do here. You know, our grant of summary judgment, I think it's more appropriate to call it partial summary judgment. I don't want to put words in the Court's mouth, but that's how I read it. I read it as — Partial in what sense? In the sense that, okay, that particular form, Gesundheit, Your Honor, that particular form, which is the same form used here, within the Ninth Circuit, we have found it to be not to meet the standards of subpart 6. Fair enough. But there are other things that have to be dealt with. The — since the issue wasn't of standing, which is what we're talking about here, standing under UCL and CLRA, and I — it was not dealt with directly in Gonzalez, it really doesn't apply here. It really doesn't provide any precedent or guidance for us. The issue here, fully briefed and being discussed, again, I think the appropriate venue for it is the California Supreme Court. And the reason it — of course, the thing is, well, you're forum shopping because you lost Gonzalez. I'm shopping for the correct forum. Because even if CARMAX prevails here, even if I get a — we get a decision that says, you know, you're absolutely right, there's no showing of standing here affirmed. That helps me in these two cases. It doesn't help CARMAX in the others because we have law going both ways. We have the state system is going its own way. The federal system has gone in different directions. Remember, we're here defending decisions. It's — it needs to be resolved, and not just for CARMAX, but definitely for CARMAX, but for every used car dealer. Because right now — and your question about what Gonzalez — Let me ask you something. It seems like — I'm sympathetic to your statement about trying to construe state law, but it seems like this court has construed state law on the ultimate issue of what's required. The only issue that you remain is, well, how do you get to sue for that? Because you violated Gonzalez in this case. Yes, Your Honor. So the only question is, what do you have to do to sue for it? Now, why do we have to ask California about that? Not the underlying liability. They may change the law. They may not like Gonzalez. I don't know that. But at least from your perspective, they may not rule that way. Well, I would certainly like to hear the Supreme Court weigh in on Gonzalez, which is not the issue we ask for certification on. We ask for certification on this issue. Standing. Standing, Your Honor. Because courts have gone in many different ways. You have — the Brooks trial court went one way. The Murray court, I believe, went another way. But the Menifee trial court went in Mr. Rosner's way. And then, of course, we have a number of federal courts here, Judge Phillips and Judge Fitzgerald, who have gone, you know, in Carmax's favor. Look, at the end of the day, Carmax would love to win these cases. But more important is certainty, certainty of exactly what is required by A6. We thought we knew. We thought we could just give a list. And that's what we did. What I'm not understanding, though, is that you admit and you violated Gonzalez, which means you would have to change your form if you're going to comply with it. So it seems like the substantive issue has been resolved in the Ninth Circuit. The only question is, how do you get there? It seems like that's a very — it's not going to change your business practice and say, well, as long as somebody doesn't complain early enough and plead actual damages, we're going to use this form. But if they do something else, we're going to use a different form. Well, Your Honor, within the Ninth Circuit, the law — Gonzalez states the law. The law in the state of California may be something different, and courts have gone in a different way. Here it is equally important to find out what damage means in this particular context, both for Carmax and for other vehicle sellers. These are two separate questions. Is that going to change your business model, standing? I mean, I'm trying to figure out — Standing itself will probably not change the business model. But standing will inform our behavior in the future. How? Will it change the form? I'm not sure. I'm not sure. Your Honor, that's a great question. I really haven't thought about it. The fact of standing issue may influence the way we do our practices. Right now, our people are already trained to talk to the people about the forms. Maybe there's more that we'll do there. I don't know. I'm really speculating now because I haven't looked at that in detail. Well, but this is your argument, is we should send it to the California Supreme Court because there are all these interests at stake. And then when you're pressed on them, you say, I haven't thought about them. Well, you know, we are somewhat reluctant to send things to the California Supreme Court because they're very busy. It's a court for the largest state in the country, and so they've got lots of cases. Plus they have the capital case burden. All capital cases must be appealed directly to the California Supreme Court. I think we generally tend to be, and they do say no to us. Other states are always, we're seldom turned down by other states when we certify things. But the California Supreme Court does turn us down. So I think we need to think carefully about what's at stake before we burden them, even with a request that they consider. And you have made a very good case for why this is important. To you or anybody, any other dealer? Well, Your Honor, I think it's important to every dealer in California. And frankly, I think it's important to other people. Well, I know you think that. But what you think doesn't matter. It's what we think. Well. You haven't really made me think your way. Just the way I'm asking you questions and what you said is, well, I haven't thought about it. So it's not even clear that you think it. Well, to be fair, I was asked a very specific question by Judge Wally, which was, how would CARMAX change its particular policies and procedures to conform to Gonzales? And I think that's a very different question. That's not what I heard him to ask. I thought what he was asking is, how will resolving the standing question affect your business practices? You said it's very important to us. We need to have certainty. And I thought the question I heard was, well, tell us. You know, Gonzales, certainly. I mean, that issue. But, you know, you now have certainty as to what's supposed to be on the form. But how does standing, how does resolving standing conclusively affect your business practices? Will your sort of salesmen scope people out and see if they have standing? Well, I'm not sure that standing will affect the business practice themselves. It will certainly affect the litigation. It will certainly affect the plaintiff's bar. It will certainly affect how these cases are brought, not only for used cars, but for other items that may be labeled as certified or similar. Look, there is no law regarding standing regarding this particular law. Kwikset doesn't fit because Kwikset was a false statement. It was these locks are made in the United States, and they were not made in the United States. Here we have a different situation. This vehicle was certified. You have just inadequately documented it. And I think Judge Burns in the Stelzer decision talks about that very, very clearly. The standing requirement is key to the way all the businesses in California have to deal with the Consumer Legal Reserve and the UCL. These are extremely potent statutes. They're extremely plaintiff's friendly. There is a lot of risk there if you do something that may, in fact, bring these cases down upon you. And it's important that that be addressed. And I think the place to do it is the California Supreme Court, because even if this court goes one way, it's still going to be litigated elsewhere, and not just by Carmex, probably by other used dealers too. Okay. Thank you. Thank you.
judges: Kozinski, Watford, Whaley